IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 10-359-2 (SD) |
| v. | : | |
| OTHNIEL TOOKES | : | |

### GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

The government respectfully submits this supplemental sentencing memorandum in order to respond to certain arguments raised by defendant Othniel Tookes in his Sentencing Memorandum.

1. Defendant's lack of prior criminal history, by itself, does not justify the requested downward variance. Defendant's calculated guideline range (including his placement in Criminal History Category I) already takes into account the absence of any prior convictions by defendant.

2. Defendant's request for a downward variance based on what defendant characterizes as "his minor role in the conspiracy" should be rejected. Defendant's role was not minor. On the contrary, defendant personally recruited the buyer and helped broker the fraudulent mortgage-backed purchase of the property at 152 Woodlawn Avenue, resulting in a $39,000 windfall to Joseph Tookes' company and a $72,000 loss to Fannie Mae. Defendant also instructed the buyer on how to foil any inquiries by the mortgage lender. Defendant posed as the buyer in several other property transactions, thereby obtaining more than $200,000 in loans based on fraudulent bank statements submitted to the lender. Defendant was fully aware of the scope the mortgage fraud scheme, and was paid $10,000 by Joseph Tookes for his assistance. In sum, defendant played a significant role in the fraud.

Certainly defendant Othniel is less culpable than his brother Joseph, who conceived of and carried out the entire fraud. The guidelines already take into account this relative difference in culpability, for the guidelines applicable to Joseph Tookes would apply an offense level enhancement for Joseph's status as the leader or organizer of the scheme, and a higher calculated offense level based on the greater fraud loss amount attributable to Joseph.

3. Defendant's assertion that he has a steady history of employment, see Defendant's Mem. at 1, is belied by his failure to provide any recent information, including income tax returns for the past several years, that would substantiate such a claim. See PSR ¶ 65. Indeed, the PSR concludes that the defendant lacks any consistent source of income whatsoever. PSR ¶ 66.

4. The government believes that consideration of all the factors in 18 U.S.C. § 3553(a), combined with the facts set forth in the Government's motion for downward departure accompanying its sentencing memorandum, support a sentence of imprisonment below the recommended guidelines range. Defendant's suggestion that no sentence of imprisonment is warranted should be rejected, as it would fall short of "afford[ing] adequate deterrence to criminal conduct" and "reflect[ing] the seriousness of the offense, promote respect for the law." 18 U.S.C. § 3553(a)(A)-(B).

5. Defendant's argument that a downward variance is required to match his sentence with that of co-defendant Tanjania Powell-Avery to avoid "unwarranted sentencing disparities" is unavailing. Contrary to defendant's suggestion, Section 3553(a)(6) is not primarily concerned with sentencing disparities in a particular case; it is designed to ensure sentencing consistency among similarly situated defendants across the entire nation. See United States v. Parker, 462

F.3d 273 (3d Cir. 2006).  One useful tool to help satisfy the goal of avoiding unwarranted sentencing disparities is the faithful application of the guidelines.  The advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984.  Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments.  See United States v. Ricks, 494 F.3d 394, 400 (3d Cir. 2007) ("The section of Booker that makes the Guidelines advisory explains that 'the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.'") (quoting United States v. Booker, 543 U.S. 220, 264-65 (2005)).

        In any case, defendant's attempt to compare himself favorably to co-defendant Powell-Avery is hindered by the aggravating circumstances of defendant's own criminal conduct, including the facts that defendant personally profited at least $10,000 for his role in the offense, instructed at least one borrower on how to mislead the lender if the lender made any inquiries about the loan, and posed as a buyer himself in several property transactions, thereby obtaining hundreds of thousands of dollars in loan money through fraud (and later defaulting on these loans, resulting in losses to the victim mortgage lender and to Fannie Mae).

6.    Finally, there is no need in this case to avoid imprisonment to allow defendant to pay restitution.  The district court case of United States v. Peterson, 363 F. Supp.2d 1060 (E.D. Wis. 2005), cited by defendant, does not support defendant's contrary suggestion.  In Peterson,

the district court elected against incarceration for a defendant convicted of embezzlement, noting that incarceration would "have impaired his ability to repay the money [$800,000] he stole." Id. at 1062.  However, the district court immediately observed that a defendant should not "receive a break just because he owes restitution.  But in the present case, where defendant had a reasonably well-paying job . . ., §3553(a)(7) weighed in favor of a sentence that would allow him to remain in the community and working." Id.  Furthermore, the court also observed that "the probation officer argued persuasively that defendant had made a sincere and thus far successful effort to address his gambling addiction, and that society would benefit more from permitting defendant to continue counseling and participation in [Gambler's Anonymous] than from sending him to prison." Id. at 1062-63 (citing § 3553(a)(2)(D)).

      No such circumstances exist in this case.  Defendant is currently unemployed, has no consistent source of income, and is being financially supported by other family members.  PSR ¶ 65-66.  Indeed, given defendant's employment history, he is not likely ever to repay the victims of his fraud.  Thus, the best way to compensate the victims would be to demonstrate that the crime of mortgage fraud receives a serious punishment, so that others are deterred from victimizing others the same way in the future.

* * *

      In conclusion, defendant's various requests for a downward variance from the guidelines are without merit.  All of the appropriate considerations of sentencing, including the

facts set forth in the government's motion for downward departure, favor the imposition in this case of a sentence of imprisonment below defendant's guidelines range.

        Respectfully submitted,

        ZANE DAVID MEMEGER,
        United States Attorney


        /s/ Richard Kornylak
        RICHARD KORNYLAK
        Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Supplemental Sentencing Memorandum has been served by electronic mail upon:

Michael Patrick Parkinson, Esquire
1818 Market Street, 30th Floor
Philadelphia, PA  19103
E-mail: mparkinson@gmail.com

/s/ Richard Kornylak
RICHARD KORNYLAK
Assistant United States Attorney

DATED: March 31, 2011